FILED

07/22/2019

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 17, 2019

## COY J. COTHAM, JR., AKA CORY J. COTHAM v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2010-C-2636     Cheryl A. Blackburn, Judge**

_____

### No. M2017-02031-CCA-R3-PC

_____

Petitioner, Coy J. Cotham, Jr., appeals the denial of his petition for post-conviction relief, in which he alleged that his trial counsel was ineffective. Petitioner contends that the post-conviction court erred by denying his *pro se* motion to relieve post-conviction counsel, or in the alternative, his motion to continue the post-conviction hearing; that his post-conviction counsel was ineffective for failing to adequately present his claims for post-conviction relief; and that the post-conviction court erred by denying his petition for post-conviction relief. Having reviewed the record and the briefs of the parties, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR. and TIMOTHY L. EASTER, JJ., joined.

Coy J. Cotham, Jr., Only, Tennessee, *Pro Se*.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Assistant Attorney General; and Glenn R. Funk, District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Facts*

Petitioner was convicted of premeditated first degree murder and especially aggravated robbery. The trial court sentenced Petitioner to life without parole plus 25 years' incarceration. Petitioner's conviction and sentence were affirmed on direct appeal.

*State v. Coy J. Cotham, Jr., aka Cory J. Cotham*, No. M2012-01150-CCA-R3-CD, 2014 WL 3778613 (Tenn. Crim. App. July 31, 2014), *perm. app. denied* (Tenn. Jan. 15, 2015).

> The crimes for which [Petitioner] was convicted stem from the August 29, 2010 shooting death of the victim, Veronica Bozza, at her home in Hermitage, Tennessee. The victim's estranged husband, Timothy Roy Bozza, who testified as a State's witness during [Petitioner]'s trial, also was indicted for first degree premeditated murder and tried separately.

*Id*. at *1.

Brian Robinson, the victim's boyfriend, discovered the victim shot to death inside her home. *Id*. at *3. Police found no evidence of a robbery. The victim's purse was found inside her vehicle, but her cell phone was missing. Cell phone records, including "numerous calls between Mr. Bozza and [Petitioner] on the day of the murder" helped the police to establish Petitioner as a person of interest. Cell phone records also showed that the victim's cell phone was being used after the time of her death, and her cell phone was using the same towers as Petitioner's cell phone. Petitioner was interviewed by police, and his statements were inconsistent with the cell phone records the police possessed.

Shell casings recovered from the crime scene linked the murder weapon, which was never found, to Petitioner's girlfriend. Police also found a photograph of an identical gun on Petitioner's cell phone. Mr. Bozza testified at trial and implicated Petitioner. Petitioner also testified and denied any involvement in the killing. *Id*.

**Post-conviction hearing**

At the outset of the hearing, Petitioner's counsel stated that Petitioner "would like to address the Court about [his] representation." The following exchange occurred:

> [PETITIONER]: Your Honor, I filed a motion to remove counsel in a timely manner. It was filed by the court clerk's office on February 9th. Because in the past eighteen months, [post-conviction counsel] has – there's multiple things he hasn't done for me. I've asked him to track down witnesses. He said he's had a problem finding some of them. I've also asked him and told him I needed certain things to prove some of my issues like copies of DVDs and stuff. I've brought a copy of all the letters I've written to him. In the motion – I'm not sure, did the Court get a copy of it?
>
> THE COURT: No, because you're represented by counsel, [Petitioner].

- 2 -

[PETITIONER]:  Okay.  Well, I mean, do I fire him on the spot?

THE COURT:  You can't fire him, [Petitioner].

[PETITIONER]:  Okay.  Well, the thing is he failed to do anything within the standards of proof, 28 subsection 6C.  He [ ] hasn't interviewed all of the relevant witnesses.  He's just now telling me probably a week ago that he couldn't find some of them and he's –

THE COURT:  You can't interview somebody you can't find, [Petitioner].

[PETITIONER]:  But that's something he should have talked to me about months ago.  The thing is – there is a copy right there.  But all the issues listed on said motion is all the problems I've had.  I've detailed every time we've talked.  I was going to file the motion in October.  [Post-conviction counsel] asked me not to.  He was like, hold on, give me – he explained to me that he was so busy, he had all these clients.  I told [counsel], I said, if my case is too much for you, relieve yourself and let me get new counsel.  He said – the month of December, he promised me the month of December I'll focus on your case, I'll come out there and see you, we'll talk about the case, we'll go over everything together.  He's never even discussed the amended petition with me.  He just filed it on his own.  He didn't even discuss it.  He's never asked me one question on my case.  And you yourself, Your Honor, know that my case is pretty complex.

THE COURT:  All right.  [Petitioner], we're going to go forward.  I'm not going to relieve [post-conviction counsel].

[PETITIONER]:  Uh-huh.

THE COURT:  If we need to do it in sections, we will if there's witnesses that need to be called other than what your grounds are.  So I'm not relieving [post-conviction counsel].  So have a seat [Petitioner].

[PETITIONER]:  So, I mean, you're violating my due process rights right now.

THE COURT:  No, I'm not, [Petitioner].  Have a seat.

[PETITIONER]:  At the point I've got counsel failing to do duty –

THE COURT:  [Petitioner], sit down, please.

[PETITIONER]:  Same crap as the trial.

THE COURT:  [Petitioner], you need to sit there and be quiet while we proceed with this.  If you want to –

[PETITIONER]:  Article [I], section 9 says I have the right to be heard.  Are you denying me that right?

THE COURT:  No, I've already heard you, and we're going to proceed with your petition.  You're going to –

[PETITIONER]:  With no witnesses?  I've given this man a whole subpoena list of all these witnesses.

THE COURT:  [Petitioner], be quiet.

[PETITIONER]:  Just keep them.

THE COURT:  All right.  So, [post-conviction counsel], do you wish to make a statement?  You filed your amended petition.  Is there anything you need to add to this . . . ?

[POST-CONVICTION COUNSEL]:  No, Your Honor.  I will say for the record that I sent subpoenas out twice for four various witnesses.  All came back undeliverable.  I have – my amended petition includes every claim that he has pretty much in his pro se petition.  So I received [Petitioner]'s letters, I met with him via video conference once, and twice here in court.  So I'm ready to go.

THE COURT:  Okay.  Let's proceed.

[PETITONER]:  Your Honor, just something for the record.

THE COURT:  [Petitioner].

- 4 -

[PETITIONER]: I wanted to point out something for the record. [Post-conviction counsel] just said on the record he sent out subpoenas for four witnesses. I sent him this over nine months ago –

THE COURT: [Petitioner], do you want to remain in the courtroom? Okay. All right.

[PETITIONER]: So you're ignoring my claims completely? I just want to get it on the record yes or no.

THE COURT: [Petitioner] –

[PETITIONER]: So yes. Okay.

Petitioner testified that his trial counsel failed to file a notice of alibi for Laura Yancey, the mother of Petitioner's son. Petitioner testified that on the day of the murder, he met Ms. Yancey at noon at a location that was twelve miles away from the crime scene. Petitioner testified that trial counsel contacted Ms. Yancey "a couple of times." Petitioner testified that he did not know that trial counsel did not intend to call any witnesses until the day of trial. Trial counsel told Petitioner on the day of trial, "we don't need any" defense witnesses. Petitioner testified that trial counsel "was walking around the courthouse that day with all the subpoenas to the witnesses in his pocket. He hadn't mailed a single one." Petitioner testified that Ms. Yancey was unable to testify at the post-conviction hearing due to work obligations.

Petitioner testified that he told trial counsel that he was at Kroger at the time of the murder and asked him to obtain video surveillance from the store, and that trial counsel failed to obtain the video. Petitioner testified that trial counsel failed to call any expert witnesses to testify at trial, even though funding had been approved by the court for experts in ballistics, DNA, and cell phone technology. Petitioner believed that a DNA expert could have challenged the State's evidence that a towel found in Petitioner's truck came from the crime scene.

Petitioner testified that trial counsel failed to call Chris Ulmelenso, the victim's housekeeper, who gave a description of a person standing in the victim's driveway at the time of the murder, and his description did not match Petitioner. Petitioner testified that trial counsel failed to call Brenda Pittman, who could have explained a text message between her and Petitioner in which Petitioner stated "I love it when a plan comes together."

Petitioner testified that trial counsel did not effectively cross-examine Jonathan Schmahl, who denied seeing Petitioner on the day of the murder, even though Mr. Schmahl stated in a police interview that he had seen Petitioner in his distinctive Cadillac Escalade early that afternoon. Petitioner testified Mr. Schmahl and Mr. Schmahl's girlfriend, Stephanie Tibbs, could have testified that Petitioner was not "hurting for money" contrary to the State's "whole theory during the trial that [Petitioner] was in this financial hardship."

Petitioner testified that trial counsel also failed to impeach State's witness Brian Robinson. Petitioner acknowledged that the public defender's office attempted to interview Mr. Robinson, who was hostile and uncooperative. Petitioner testified that Mr. Robinson stated in a recorded interview with police that he looked inside the victim's car and purse in the garage of the victim's home before he entered the victim's home where the victim's body was discovered. Petitioner testified that Mr. Robinson denied at trial that he had previously stated that he was looking for a gun. Petitioner testified, "[f]or him to lie about it at trial, that's kind of suspect."

Petitioner testified that trial counsel also failed to question co-defendant Timothy Bozza about his statements in numerous jail phone calls that Petitioner had nothing to do with the murder. Petitioner also testified that trial counsel should have introduced text messages between Petitioner and Mr. Bozza on the morning following the victim's murder. Petitioner believed that the messages would have shown that he had no prior knowledge of the murder.

Petitioner testified that the trial judge denied a motion for continuance by trial counsel because she was "bias[]ed the entire time since this case began." He testified that trial counsel also asked to be removed from the case because trial counsel did not "have everything he need[ed]" to "defend [Petitioner] to the best of his ability[.]" Petitioner testified that trial counsel was not prepared for trial and "didn't know what was going on." He testified, "[t]he list goes on for all the stuff that [trial counsel] didn't do."

Petitioner acknowledged that trial counsel responded to his letters and visited him in jail several times. Petitioner testified, "one thing I'll say is [trial counsel] was good about [ ] coming to visit, but he just didn't make a lot of progress on the case."

Petitioner testified that trial counsel failed to object on the grounds of prosecutorial misconduct to the prosecutor's statements during closing argument that Petitioner was a convicted felon.

Trial counsel testified that he was an assistant public defender at the time of Petitioner's trial. He testified that he had been a criminal defense attorney in Nashville

"for about thirty years" prior to representing Petitioner and that he could not "begin to count" the number of murder cases in which he had represented defendants. Trial counsel visited Petitioner in jail on October 1, 2010, prior to Petitioner's arraignment. Trial counsel did not recall whether Petitioner mentioned the Kroger video at their first meeting. He testified that he believed Kroger maintained surveillance videos for 45 days at the time, and the 45-day period would have expired the same week he was appointed to represent Petitioner. Trial counsel testified, "we were nowhere near prepared to address substantive issues at that point and were barely understanding the charges, had not received any pretrial discovery, did not know whether or not that might have been incorporated into the discovery." Trial counsel subsequently requested the video "and learned they had been taped over or erased, whichever."

Trial counsel testified that his team interviewed Laura Yancey several times. He testified that there "were several different reasons" for not calling Ms. Yancey as an alibi witness. Trial counsel testified that Petitioner had two alibis, Ms. Yancey and Jennifer Addington, who contradicted each other. Each woman stated that Petitioner was with her (and not the other woman) at the time of the murder. Ms. Yancey initially told trial counsel that she did not want to testify for Petitioner, that she suffered from Post-Traumatic Stress Disorder and anxiety, that she was using drugs at the time of the offense, and that she had difficulty remembering details. Trial counsel testified that Ms. Yancey recanted those statements after she talked to Petitioner. Trial counsel thought that Ms. Yancey's revised account of how she spent the day with Petitioner was implausible and would not have been persuasive to a jury.

Trial counsel reviewed police reports and interviewed Sherry Nehs and her husband, who were neighbors of the victim. Ms. Nehs initially stated that she had seen a small white SUV in the alley beside the victim's home just before the murder. She later described the vehicle as "champagne or light gold." Trial counsel testified, "[t]hat unfortunately is a near perfect description of [Petitioner]'s champagne colored Cadillac SUV. I did not call her because I did not wish to show that he was present at the time of the offense."

Trial counsel testified that he had "extensive contacts" with Brenda Pittman. Trial counsel did not call Ms. Pittman to testify because she was "clearly a partisan," and her testimony was relevant to a "minor point in the case." Trial counsel testified that he received "quite a few e-mails" from Ms. Pittman, "which basically were dictation from [Petitioner]." He testified that if he called Ms. Pittman to testify at trial, he would have risked having her emails introduced into evidence as well.

Trial counsel's investigators also interviewed former employees of Timothy Bozza, who Petitioner claimed heard Mr. Bozza state that he wanted to kill the victim.

Trial counsel testified that one of the people interviewed, Todd Fairchild, heard Mr. Bozza "make the statement [']it would just be better if she, the victim, wasn't around,['] he never heard Bozza threaten to kill his ex-wife or hire anyone to kill her." Trial counsel did not believe Mr. Fairchild's testimony would have been helpful to the defense.

Trial counsel consulted several experts, including "two different sets of experts regarding the cell phone technology." Trial counsel decided against calling his main cell phone expert because "the State was able to contradict his knowledge as being dated and out of sync with current technology regarding cell phone evidence" at a pre-trial hearing. Trial counsel also hired a DNA expert, but decided against calling that expert to testify as well. Trial counsel testified, "I assure you that if he had contradicted the State's evidence in the case that he would have been called as a witness. I can't just tell you affirmatively that he confirmed that evidence." Trial counsel also hired a ballistics expert whom trial counsel did not call to testify because "[h]e concurred with the State's findings."

Regarding the jail phone calls between Mr. Bozza and Petitioner, trial counsel testified, "in theory they could have been admissible in impeachment of Mr. Bozza when he testified." Trial counsel testified that the phone calls, in which Mr. Bozza maintained his innocence, were "self-serving" and would not have reflected on Petitioner's guilt or innocence.

Trial counsel did not recall who cross-examined Jonathan Schmahl, but he testified, "I would hope that [h]e was cross-examined on" his prior inconsistent statement to detectives that he saw Petitioner in his Escalade on the day of the murder.

Trial counsel filed a motion to continue Petitioner's trial because the defense received additional new evidence in the form of cell phone data that needed to be reviewed. Trial counsel also testified, "[Petitioner] was very unhappy and making a large number of demands upon his defense that we in preparation for trial couldn't respond to." Trial counsel testified that the defense team was not "totally ready" for trial even without considering Petitioner's demands. Trial counsel raised this issue in Petitioner's motion for new trial. Trial counsel testified that Petitioner "wrote greatly and called regularly." Trial counsel testified that in representing Petitioner, he "did not do anything that met with [Petitioner]'s approval."

### *Analysis*

#### *Post-conviction counsel*

Petitioner contends that the post-conviction court erred by refusing to hear his motion to remove post-conviction counsel and that it erred by denying his motion to

continue the evidentiary hearing. Petitioner also asserts that his post-conviction counsel rendered ineffective assistance because he "inexplicably failed to subpoena and[/]or present any of the witnesses" necessary to establish his post-conviction claims.

Petitioner does not have a constitutional right to the effective assistance of post-conviction counsel. *Frazier v. State*, 303 S.W.3d 674, 680 (Tenn. 2010). The right to post-conviction counsel is statutorily based, found in the Post-Conviction Procedure Act. T.C.A. § 40-30-107(b). The justification for this statutory right "is to afford a petitioner the full and fair consideration of all possible grounds for relief." *Frazier*, 303 S.W.3d at 680. In furtherance of this purpose, our supreme court requires a minimum standard of service for all post-conviction counsel. *Frazier*, 303 S.W.3d at 682; *see* Tenn. Sup. Ct. R. 28, § 6(C)(2)-(4). These minimum standards provide that:

> Appointed or retained counsel shall be required to review the pro se petition, file an amended petition asserting other claims which petitioner arguably has or a written notice that no amended petition will be filed, interview relevant witnesses, including petitioner and prior counsel, and diligently investigate and present all reasonable claims.

Tenn. Sup. Ct. R. 28, § 6(C)(2). However, this court "has repeatedly held that violations of Rule 28 by post-conviction counsel do not afford the remedial right of a second post-conviction hearing." *See Demarcus Keyon Cole v. State*, No. W2015-01901-CCA-R3-PC, 2016 WL 2859196, at *11 (Tenn. Crim. App. May 11, 2016), *perm. app. denied* (Tenn. Sept. 26, 2016).

Due process in the post-conviction context merely requires that "the defendant have 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Stokes v. State*, 146 S.W.3d 56, 61 (Tenn. 2004) (quoting *House v. State*, 911 S.W.2d 705, 711 (Tenn. 1995)). Specifically, a full and fair hearing requires only "the opportunity to present proof and argument on the petition for post-conviction relief." *House*, 911 S.W.2d at 714.

Petitioner contends that the post-conviction court denied him "the opportunity to fire counsel, remove counsel, or even proceed on his own." We review the post-conviction court's decision of whether to remove post-conviction counsel for an abuse of discretion. *See Leslie v. State*, 36 S.W.3d 34, 37-38 (Tenn. 2000).

Petitioner argues that his post-conviction counsel was also post-conviction counsel in a case in which a panel of this court found error in the post-conviction court's summary denial of the petitioner's request to proceed *pro se*. *Jerome Sidney Barrett v. State*, No. M2015-01143-CCA-R3-PC, 2016 WL 4768698 at *1 (Tenn. Crim. App. Sept.

12, 2016), *reh'g denied* (Tenn. Crim. App. Oct. 19, 2016), *no perm. app. filed*. Petitioner's assertion that the circumstances in his case and those in *Jerome Sidney Barrett* are "nearly identical" is misplaced. In that case, we concluded that the post-conviction court erred by not considering Barrett's unequivocal request to represent himself based on his uncontested claim that counsel never met with him, was not familiar with the case, did not include his issues in the amended petition, and failed to subpoena witnesses. *Id*. at *5. The panel concluded that post-conviction counsel failed to comply with Rule 28. The panel noted that post-conviction counsel did not meet with the petitioner until the day of the post-conviction hearing and that several of the petitioner's issues were not developed or investigated. Furthermore, the record contained no Rule 28 certification confirming that post-conviction counsel had thoroughly investigated the possible constitutional violations, had discussed them with the petitioner, and had raised all non-frivolous constitutional grounds warranted by existing law. The panel held, "[u]nder these circumstances, the denial of a continuance deprived the Petitioner of a fair post-conviction hearing." *Id*.

Here, post-conviction counsel filed a detailed amended petition incorporating Petitioner's numerous claims, met with Petitioner prior to the hearing, and corresponded with Petitioner. Counsel also filed the certification required by the Supreme Court Rules attesting to his adherence to Rule 28 standards. The record indicates that post-conviction counsel interviewed Petitioner, considered the witnesses Petitioner believed were necessary, and attempted to secure their attendance. Counsel issued four subpoenas, all of which were returned as undeliverable. The decision as to whether to subpoena all the witnesses demanded by Petitioner was a matter left to post-conviction counsel's sound judgment. *See Leslie*, 36 S.W.3d at 38 ("Counsel must consult with the petitioner where feasible but retains the right to make strategic and tactical decisions – including the determination of which issues should be raised and pursued – based on counsel's professional judgment."). The record shows that post-conviction counsel adequately complied with the requirements of Rule 28.

We note that Petitioner stated at the February 21, 2017 post-conviction hearing that he filed a motion to remove his post-conviction counsel on February 9, 2017. The record does not contain Petitioner's motion. Nevertheless, we conclude that the post-conviction court did not abuse its discretion by denying Petitioner's request to remove post-conviction counsel. We also conclude that the post-conviction court did not err by denying Petitioner's implied request to continue the post-conviction hearing. The trial court stated, "[i]f we need to do [the hearing] in sections, we will if there [are] witnesses that need to be called other than what your grounds are." Petitioner is not entitled to relief on this issue.

Petitioner also argues that the standard for effective assistance of trial counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) should apply to counsel's representation in post-conviction proceedings, citing the federal decisions of *Martinez v. Ryan*, 566 U.S. 1 (2012), *Trevino v. Thaler*, 569 U.S. 413 (2013), and *Sutton v. Carpenter*, 745 F.3d 787 (6th Cir. 2014). This contention has been repeatedly addressed and rejected by this court. *See Bryiant C. Overton v. State*, No. M2016-00783-CCA-R3-PC, 2018 WL 287176, at *6 (Tenn. Crim. App. Jan. 4, 2018), *no perm. app. filed*.

*Trial counsel*

Petitioner contends that trial counsel was ineffective because he "failed to subject the [S]tate's case to a meaningful adversarial testing." Petitioner raised more than 20 factual allegations of ineffective assistance of trial counsel in his *pro se* and amended petitions for post-conviction relief. In a written order denying relief, the post-conviction court addressed all of Petitioner's claims for relief. In his brief on appeal, Petitioner raises six issues. Allegations raised in the petition but not pursued on appeal are generally deemed abandoned. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) ("While the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal."), *perm. app. denied* (Tenn. Apr. 16, 2010).

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn.1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of trial counsel. In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland*, 466 U.S. at 687, a petitioner must prove that trial counsel's performance was deficient and that deficiency prejudiced the defense. *See Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice

- 11 -

provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

The test for deficient performance is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. To be considered deficient, counsel's acts or omissions must fall below an objective standard of reasonableness under prevailing professional norms. *Id*.; *Henley*, 960 S.W.2d at 579. This court "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This court will not use hindsight to second-guess a reasonably-based trial strategy. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel, however, is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

Whether a petitioner has been denied the effective assistance of trial counsel presents a mixed question of law and fact. *Burns*, 6 S.W.3d at 461. This court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley*, 960 S.W.2d at 578). This court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Henley*, 960 S.W.2d at 579. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

Petitioner asserts that trial counsel failed to obtain video surveillance from Kroger from the day of the offense, which Petitioner claims would have established that he was at the store at the time of the murder. Petitioner claims that the video would have placed him 12 miles away from the murder scene, and that trial counsel's failure to investigate this deprived him of an alibi defense. The victim was murdered on August 29, 2010. Trial counsel testified that he first met with Petitioner on October 1, 2010, and he was appointed by the trial court to represent Petitioner on or about October 6, 2010. Trial counsel did not recall Petitioner mentioning the Kroger video at their first meeting, but he

testified that Petitioner did mention it sometime later.  Trial counsel requested the video recording from the Kroger store, but it was no longer available.

The post-conviction court accredited trial counsel's testimony and found that trial counsel "acted diligently; however, the footage already was erased when requested due to the store surveillance policy."  The court noted that trial counsel "had only two days to secure the footage upon being appointed" to represent Petitioner.  However, Petitioner did not mention the Kroger video until it was too late to obtain it.  We conclude that the evidence does not preponderate against the post-conviction court's finding that trial counsel acted with reasonable diligence in attempting to secure the video evidence.  Petitioner has not established that trial counsel acted deficiently on this ground.

Petitioner asserts that trial counsel was ineffective for failing to file a notice of alibi and call Laura Yancey to testify at trial.  First, we note that Ms. Yancey did not testify at the evidentiary hearing.  *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (the witness's testimony is generally required for the post-conviction court to determine whether there was a "denial of critical evidence which inured to the prejudice of the petitioner").  Furthermore, trial counsel testified that he and members of his team interviewed Ms. Yancey several times.  Trial counsel considered her various statements and decided against calling her to testify.  Trial counsel testified that Petitioner had two inconsistent alibis, Ms. Yancey and his girlfriend Jennifer Addington.  Each woman stated that Petitioner was with her at the time of the murder.  Prior to trial, Ms. Yancey communicated to trial counsel that she did not want to testify, that she suffered from PTSD, and that she had trouble remembering details because of her drug use.  Ms. Yancey later recanted those statements.  Trial counsel testified that he had concerns about Ms. Yancey's credibility.

The post-conviction court accredited trial counsel's testimony and found that he had sound strategic reasons for deciding that Ms. Yancey would not have been an effective witness.  The record does not preponderate against the post-conviction court's finding that trial counsel's decision not to call Ms. Yancey as an alibi witness was a strategic choice based upon adequate preparation.  Petitioner has not established that trial counsel acted deficiently on this ground.

Petitioner asserts that trial counsel was ineffective for failing to "effective[ly] cross[-]examine and impeach the witnesses that were offered by the [S]tate."  Specifically, Petitioner contends that trial counsel failed to impeach Mr. Schmahl with a prior inconsistent statement to investigators that he had seen Petitioner in his Cadillac Escalade approximately seven miles away from the crime scene at the time of the murder.  At trial, Mr. Schmahl testified that he received a phone call from Petitioner at 12:28 p.m., and Petitioner told him that he had just passed him in the opposite direction on Old

Hickory Boulevard in Hermitage. Mr. Schmahl testified that he looked around but did not see Petitioner's Escalade. Petitioner contends that this testimony contradicts Mr. Schmahl's statement to investigators that he saw Petitioner's distinctive vehicle in his rearview mirror.

At the post-conviction hearing, trial counsel could not recall which defense counsel cross-examined Mr. Schmahl or whether he was asked about this point. The trial transcript, which was admitted as an exhibit to the post-conviction hearing, shows that trial counsel's co-counsel elicited this fact through her cross-examination of Detective Injaychock. She asked, "[i]sn't it true that Mr. Schmahl told you that he had seen [Petitioner]'s Escalade on Old Hickory Boulevard that day?" Detective Injaychock answered, "Yes."

The post-conviction court concluded that Petitioner had not demonstrated by clear and convincing evidence that impeachment of Mr. Schmahl with a prior inconsistent statement "would have changed the outcome of the trial in light of the other evidence." We conclude that the evidence does not preponderate against the post-conviction court's finding.

Petitioner contends that trial counsel "absolutely failed" to effectively cross-examine several other witnesses with their prior . . . recorded statements made to police," but Petitioner does not identify those witnesses in his brief on appeal. In his amended petition, Petitioner lists other witnesses he claims trial counsel failed to impeach with prior inconsistent statements, including Jennifer Addington, Jessica Logsdon, Chad Wilson, Brian Robinson, Bo Bice, and Pam Phillips. Petitioner refers to two CDs purportedly containing police interviews of these witnesses. However, in his brief on appeal, Petitioner does not identify what inconsistencies these recordings contain or explain their relevance to his case.

It is well-settled that "cross-examination is a strategic and tactical decision of trial counsel, which is not to be measured by hindsight." *State v. Kerley*, 820 S.W.2d 753, 756 (Tenn. Crim. App. 1991). The post-conviction court found that trial counsel made reasonably-based strategic decisions during cross-examination. The evidence does not preponderate against that finding.

Petitioner asserts that trial counsel was ineffective for failing to call as witnesses: the victim's neighbors, James and Sherry Nehs and Herman and Gloria Holmes; the victim's housekeeper, Chris Ulmelenso; Petitioner's friend Brenda Pittman; and Pam Phillips, Christopher Hopkins, and Todd Fairchild, who were former employees or friends of co-defendant Timothy Bozza.

First, as the post-conviction court noted, Petitioner did not present any of these witnesses at the post-conviction hearing. *See Black*, 794 S.W.2d at 757. Moreover, trial counsel testified at the post-conviction hearing that he interviewed the proposed witnesses in preparation for Petitioner's trial, and he gave reasons for his decisions not to call certain witnesses.

Trial counsel recalled at the post-conviction hearing that the victim's neighbor Ms. Nehs initially told the defense that she had seen a small white SUV in the alley beside the victim's home just before the killing. She later described it as champagne or light gold, which trial counsel testified was a "near perfect description" of Petitioner's vehicle. Trial counsel testified that he did not call her to testify because he "did not wish to show that [Petitioner] was present at the time of the offense." Trial counsel testified that he did not call Mr. Ulmelenso, who was a housekeeper for one of the victim's neighbors, because he gave conflicting details about a black male he saw near the crime scene. Trial counsel testified that he had "extensive contacts" with Brenda Pittman. He did not call her to testify at trial because he believed she was a biased witness, and her testimony would have addressed only a minor point in the case. Trial counsel was also concerned that calling her to testify could have resulted in several emails Ms. Pittman wrote to trial counsel, in which she recounted her conversations with Petitioner from jail, being introduced into evidence.

Regarding Mr. Bozza's former employees, Ms. Phillips and Mr. Hopkins, and his friend Mr. Fairchild, Petitioner asserted that trial counsel was ineffective for failing to call them to testify that Mr. Bozza had long-standing plans to kill his wife. Trial counsel testified that his investigator interviewed these potential witnesses, and trial counsel decided against calling them to testify because he did not see any benefit to the defense by establishing that Mr. Bozza had the intent to kill his wife. Trial counsel noted that the case was tactically difficult because he needed to simultaneously separate Petitioner from his co-defendant Mr. Bozza while also blaming Mr. Bozza for the murder.

The post-conviction court accredited trial counsel's testimony and found that trial counsel's strategic decisions were based upon adequate preparation. The evidence does not preponderate against that finding.

Finally, Petitioner asserts that the prosecutor committed improper prosecutorial conduct by presenting "perjured testimony" from Mr. Schmahl, Detective Injaychock, and Mr. Robinson. Petitioner's assertion is based on Petitioner's claim that Mr. Schmahl's trial testimony contradicted his statement in his police interview. The post-conviction court found that there was no evidence that Mr. Schmahl or any other witness at the trial committed perjury, and that Petitioner had failed to establish this allegation by clear and convincing evidence. The record does not preponderate against this finding.

- 15 -

Additionally, a ground for post-conviction relief is waived if a petitioner previously failed to raise it "in any proceeding before a court of competent jurisdiction in which the ground could have been presented." T.C.A. § 40-30-106(g). Petitioner's claim of improper prosecutorial conduct could have been raised on direct appeal, and his failure to do so constitutes waiver. Petitioner is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the denial of the petition.

_____
THOMAS T. WOODALL, JUDGE